DOWNEY, Chief Judge.
Appellant seeks reversal of a final judgment awarding appellee $35,434.36 as its share of a brokerage commission.
It appears that Mobile Townes of Ft. Lauderdale, Inc. (hereinafter denominated Mobile) owned certain real estate in Bro-ward County which it contracted to sell to Oscar J. Mannen. After Mannen defaulted the contract was modified so as to extend the time for Mannen to perform. However, the modification also allowed Mobile to sell the property to a third party at any time before Mannen exercised his option to purchase.
*130 In an effort to sell his option Mannen listed his contract with Joseph C. Mackey & Company (Mackey) and agreed to pay as a commission that part of the sales price which exceeded $8000 per acre if Mackey consummated a sale. Mackey’s commercial sales manager, Robert Monfort, contacted others, including Larry Leidheiser, a salesman with appellee, Sonnenblick-Goldman Realty Corp. Monfort informed Leidheiser of the location and size of the property, the price and terms of payment, the name of the “seller”, and the fact that the seller held a contract to purchase which was the property interest being sold. Leidheiser was informed the commission was $500 per acre, to be divided equally between Mackey and appellee. Monfort did not inform Leid-heiser the commission would be paid only if sales price exceeded $8000 per acre or that the commission would be earned only if the sale were consummated.
Armed with this information Leidheiser contacted Lottie Lindsay, a saleswoman with appellant, L. C. Judd & Co., Inc., and enlisted her assistance in finding a buyer. Leidheiser advised Lindsay that appellee had a listing on the 556 acres of property. However, he did not tell Lindsay that ap-pellee’s listing was only to sell a contract to buy said property, or that the sale had to go through Mackey or that the usual commission agreement did not apply. In fact, Lindsay was under the impression that ap-pellee had an exclusive right to sell the property. Thus, Lindsay and appellant did not know prior to the sale by Mobile to Nage, Inc.,[1] that Mackey had a listing on the property or had any connection with the property; neither did they know prior to that sale that Mannen had entered into a contract to purchase the property from Mobile, nor that Mannen had any interest in or connection with the property.
Shortly after her meeting with Leidheiser and being of the impression that appellee held an exclusive right to sell the property Lindsay registered with appellee that she had a prospect for the property. She also sent a copy of that letter to Mobile whose name and address she had obtained from the County tax rolls. In due course, Mobile responded to the letter of registration and advised Lindsay that its property was being offered for sale but for a different price and terms than she had quoted. Upon receipt of the Mobile letter Lindsay called Leidheiser but their testimony differs somewhat on the content of their conversation. Leidheiser testified that he told Lindsay he could not account for the discrepancy in the information which he had furnished her and that furnished by Mobile. He told her she should work through him and not with Mobile. When Leidheiser either could not or would not explain the discrepancy between his terms and those quoted Lindsay by Mobile, the owner, and told her they could not work with the Mobile terms, Lindsay advised Leidheiser she was going to try to sell the property for the owner on his terms. Lindsay testified that Leidheiser said: “You go your way and I’ll go mine. We will call it quits.” Thereafter, Judd received a listing agreement from Mobile. Pursuant to that listing agreement Judd eventually sold the property to Nage, Inc. through Ward, another broker. The commission on the sale amounted to $369,000, which Ward and appellant had agreed to divide equally. This suit arose after appellant refused to split its share of the commission with appellee. The jury returned a verdict of $65,000 for appellee and the trial court ordered a remittitur of $29,565.64 which appellee accepted. Thus, judgment was entered for $35,434.36. We find this judgment must be reversed.
Appellee’s Second Amended Complaint alleges that Leidheiser approached appellant through Lindsay and advised her of the availability of the property for sale upon the express understanding that if appellant was thereafter involved in the sale of the property one-half of the commission would be payable to appellee who, in turn, would share the commission with Mackey. How *131 ever, the proof showed that Leidheiser left Lindsay with the impression that appellee had a listing on the property from the owner for $8500 per acre, upon certain terms, and that if Lindsay could sell the property they would split the commission. Lindsay immediately determined from the tax rolls that the property was in the name of Mobile. Hence, in registering a prospect she notified Mobile as well as appellee and soon learned that Mobile owned the property and wanted to sell it, but not on the terms which Lindsay had mentioned in her letter (which terms she had gotten from Leidheiser). Apparently, Lindsay also learned that appellees so-called listing was for the sale of a contract to purchase and was, in fact, not a listing from the property owner but merely an open invitation from another broker (Mackey) to help them sell Mannen’s contract.
As we view this record no contract obligation arose between appellant and appel-lee as a result of the communication between Leidheiser and Lindsay except that, if appellant had procured a sale of Man-nen’s contract, appellee would have participated in the commission. Contrary to the allegation of appellee’s Second Amended Complaint there was no agreement to share a commission if appellant sold the property for the owner, Mobile, because Leidheiser did not have a listing from the owner although he led Lindsay to believe such was the case; of course appellee’s “listing” to sell Mannen’s contract was never mentioned to Lindsay. Had Leidheiser told Lindsay the true facts about appellee’s “listing” Lindsay may have agreed to restrict her activity to selling Mannen’s contract or she may have refused to become involved at all with appellee. In any event, appellee had no relationship with Mobile, nor did Mack-ey. Appellant’s relationship with Mobile arose in good faith when Lindsay found out Leidheiser had given her figures and terms to sell a piece of property which the owner disavowed. At that point when Leidheiser refused to divulge his source or any other information Lindsay terminated any relationship with Leidheiser and made no further effort to sell the Mannen contract. The record is devoid of any evidence of fraud, double dealing or breach of any fiduciary relationship or contract between appellant and appellee. Thus, there is no basis in law for appellee to claim a right to participate in a commission which it did not earn either as the selling broker or as one who indirectly procured the sale.
Accordingly, we find no support in the record for the jury’s findings and the ensuing judgment. Therefore, the judgment appealed from is reversed and the cause is remanded with directions to enter judgment for the appellant.
DAUKSCH and MOORE, JJ., concur.

. The ultimate purchaser giving rise to the commission which is the subject of this litigation.